### NEWCOMB-ENDICOTT CO. *v.* FEE.

1. CORPORATIONS—PARTNERSHIP — ESTOPPEL — DEBTOR AND CREDITOR—DE FACTO ORGANIZATION.

   Plaintiff was not entitled to hold as a copartnership the members of a corporation, which had, at the time the debt was incurred, filed its articles of incorporation with the secretary of State, but had omitted to file the same with the county clerk as required by Act No. 232, Pub. Acts 1903, upon evidence showing that goods were sold to the company by its name, and plaintiff's agents did not know whether the defendants were a corporation or a partnership, and that plaintiff did not extend credit to the defendants as copartners, or rely on their having previously dealt with plaintiff as a partnership; plaintiff was estopped to question the *de facto* existence of the corporation.[1]

2. SAME.

   Since the statute contemplates the complete organization of the association and the election of officers before the recording of the articles, failure to file the articles of association with the county clerk did not prevent the corporation from having legal existence except as to the State, which alone could object to its carrying on business.

[1] Partnership liability of stockholders in case of defective or illegal incorporation, see note in 17 L. R. A. 549.

3. SAME.
> Where an attempt has been made to organize a corporation under a valid act, and the question is one of regularity merely, parties recognizing its legal corporate existence by dealing with it have no right to object to any irregularity in such organization.

4. SAME.
> Two things are necessary to be shown in order to establish a corporation *de facto*, viz.: (1) The existence of a charter or some law under which a corporation with the powers assumed might lawfully be created; (2) a user by the party to the suit of rights claimed to be conferred by such a charter or law. *Eaton* v. *Walker*, 76 Mich. 585 (43 N. W. 640, 6 L. R. A. 102).

5. SAME—EVIDENCE.
> If the law exists and the record exhibits a *bona fide* attempt to organize under it, very slight evidence of user beyond this is all that can be required.

Error to Wayne; Codd, J. Submitted November 8, 1911. (Docket No. 70.) Decided December 8, 1911.

Assumpsit in justice's court by Newcomb-Endicott Company against Robert L. Fee and others for goods sold and delivered. Plaintiff recovered and defendants appealed to the circuit court. A judgment for defendants on a verdict directed by the court is reviewed by plaintiff on writ of error. Affirmed.

*Luman W. Goodenough* and *Irvin Long*, for appellant.

*Barnes & Stowers*, for appellees.

STONE, J. This case originated in justice's court, where the plaintiff recovered a judgment, and the defendants appealed to the circuit court.

In the first count of the declaration the defendants are sued as copartners, doing business as Fred J. Pound Company. It is alleged that they were indebted to the plaintiff for the price and value of a bill of goods amount-

ing to $117.90, sold and delivered to the defendants by the plaintiff.

The second count alleges that the Fred J. Pound Company was a corporation organized and existing under the laws of the State of Michigan, and was indebted to the plaintiff in the above sum for goods sold and delivered to the said Fred J. Pound Company. It is further alleged that the defendants were directors of said corporation during the months of January and February in the year 1909, and during the first 10 days of the month of March, 1909; that it became the duty of such directors, in accordance with the statute, during the months of January and February, and during the first ten days of the month of March, 1909, to join in the making of an annual report of the affairs of the Fred J. Pound Company, the said corporation. It is further alleged that the defendants, well knowing their duty in this behalf, neglected and refused to join in the making of such report during the time above alleged, and continued to so neglect and refuse to join in the making of such report until the 31st day of March, 1909, when their report was made; and the plaintiff alleges that, in accordance with said statute, said defendants became and were liable for all debts of the said corporation, and especially for the debt aforesaid, incurred in the month of July, 1908, to which declaration is added the common counts in assumpsit.

Upon the trial of the case in the circuit court, William H. Anderson was produced as a witness for the plaintiff, and testified that during the years of 1908 and 1909 he was the bookkeeper of the plaintiff, and that the goods sued for were installed in Pound & Co.'s Inn. He did not know who ordered them; witness was not the selling party; that he extended the credit to Pound & Co. in June and July, 1908; that he knew that the defendant Fee was connected with the company. Witness was not familiar with the form of the organization of the company. He did not know whether it was a corporation or a part-

nership. Defendants' counsel, when asked if he would admit the amount of the bill, answered as follows:

"We cannot deny it. We will have to admit it. We will show Mr. Pound bought them, and we suppose it is all right."

It appeared that the bill had never been paid. On cross-examination the witness testified that he had no personal knowledge what individual bought the goods; that he was asked for credit for the F. J. Pound Company by some one, and he extended credit to the F. J. Pound Company. Witness did not go to the county clerk's office to find out whether Pound & Co. had filed their articles of association or not. Witness testified that the plaintiff sent statements every two or three months to F. J. Pound & Co. The plaintiff, on re-examination of the witness, offered in evidence the articles of association of the Fred J. Pound Company. The articles show that the three defendants, as incorporators, desiring to become incorporated under the provisions of Act No. 232, Pub. Acts 1903, known as the "Manufacturing and Mercantile Act," executed and adopted the articles of association in due form. The articles were signed by the three defendants, and duly acknowledged on the 5th day of June, 1908, before a notary public. It appears that the articles of association were filed with the secretary of State June 15, 1908, and duly recorded, and that they were filed with the county clerk on March 22, 1909. There was no evidence that the defendants had attempted to carry on business as copartners prior to the execution of the articles above referred to.

Defendant Fee testified that he was president and stockholder of the F. J. Pound Company; that he recollected when the articles of association were executed, and signed the articles; that he supposed they were duly filed, and that he left them with Mr. Bock to be filed; that Mr. Bock was one of the directors. Defendant Bock testified that the articles were duly executed, that they were sent

to the secretary of State; that, when they came back, they were copied in the secretary's record book; that the articles were filed with the county clerk some time in March, 1909; that Mr. Pound was the manager of the said company.

At the close of the testimony counsel for plaintiff made a motion to direct a verdict for the plaintiff, for the reason that the articles of association were not filed in accordance with the statute of the State of Michigan, providing that a corporation shall transact no business until its articles of association have been filed in the office of the secretary of State and with the clerk of the county where the corporation has its principal office—in both places; that the undisputed testimony shows that the articles were filed in the office of the secretary of State June 15, 1908; that the bill for which this suit is brought was contracted in July, 1908, and the articles of association were not filed in the office of the county clerk until March, 1909; and that in the meantime the corporation did carry on business in violation of the statute, and that these defendants should be held as copartners.

The trial judge held that the corporation was a *de facto* corporation when the articles were filed in the office of the secretary of State, that the corporation *de facto* was in existence at the time the credit was extended, and that the credit was extended to the company, and not to the individuals. In his charge to the jury the trial judge used the following language:

"The plaintiff alleges that the copartnership was in existence by reason of their not having filed articles of incorporation in the office of the county clerk until after the credit had been extended. The undisputed testimony shows that the gentlemen named signed articles on the 5th day of June, and that on the 15th day of June those articles were filed with the secretary of State at Lansing. After that time, in the month of July, that year, credit was extended by the Newcomb-Endicott Company to Fred J. Pound Company upon their books as shown in the testimony. I believe that the testimony shows that credit

was extended, not to the various defendants individually, but to Fred J. Pound Company. While it possibly may be that the company had not fully completed all of the requisites of incorporation, and had not filed their articles in the county clerk's office, still I charge you that they were at that time a corporation *de facto* under the laws of the State of Michigan, as I understand them, and a person dealing with a corporation *de facto* is estopped from denying its validity. I charge you that this suit should have been brought for these goods against the Fred J. Pound Company, a body corporate. Your verdict should be for the defendants, no cause of action."

A verdict was thereupon returned for the defendants, and the judgment followed.

The plaintiff has brought the suit here by writ of error, and the errors relied upon by the appellant in the brief of counsel are:

(3) That the court erred in denying the motion of plaintiff's counsel, at the close of all the evidence, to direct a verdict for the plaintiff, for the reason that the defendants, not having complied with the statutes of the State of Michigan in regard to filing the articles of association in the office of the county clerk of Wayne county, were not entitled to carry on business as a corporation, and were copartners at the time the articles mentioned in the bill of particulars were purchased.

(4) That the court erred in holding that a corporation *de facto* was in existence at the time credit was extended, and that credit was extended, not to the individuals composing Pound & Co., but to the *de facto* corporation.

(5) That the court erred in directing the jury to return a verdict for defendants of no cause of action.

Counsel for plaintiff in his brief says that the only question involved is whether the plaintiff can hold defendants liable as partners for the goods purchased before they had recorded their articles of association with the county clerk. It is the claim of plaintiff's counsel that recording the articles of association is a prerequisite to corporate existence. The act in question provides as follows:

" Before any corporation, organized under this act to operate in this State, shall commence business, the presi-

dent shall cause the articles of association to be recorded at the expense of said corporation in the office of the secretary of State of this State, and in the office of the county clerk in which such operations are to be carried on." [Act No. 232, § 9, Pub. Acts 1903.]

The plaintiff insists that this prohibits business dealings in the corporate name, and under corporate liability until the conditions therein specified—*i. e.*, the filing of the articles both with the secretary of State and the county clerk—have been fulfilled. He cites in support of this position *Whipple* v. *Parker*, 29 Mich. 369. In that case Justice CHRISTIANCY, who spoke for the court, said, on page 379:

"But there was no proof of the filing of the articles with the secretary of State, as required of corporations of this kind before they are allowed to commence business. Comp. Laws 1871, § 2838. And it was probably for this reason (for the record does not show the ground) that the objection was made that there was no legal evidence of incorporation. But whether this statute does not recognize the corporation as in existence before the filing of the articles, and whether the want of such filing before commencing business is not an objection which can only be made on behalf of the State, as we are inclined to think; or whether the defendant as a member, participating in the formation and in the business of this corporation *de facto*, was not estopped from denying its incorporation (*Swartwout* v. *Railroad Co.*, 24 Mich. 389), and whether there was not legal evidence of the corporation, are questions not necessary to the decision of this case, and I do not propose to consider them."

In 10 Cyc. p. 253, we find the following:

"A corporation *de facto* exists when there is: (1) A charter or statute under which a corporation with the powers assumed might have been organized. (2) A bona fide attempt to organize a corporation under such a charter or statute. (3) An actual user of the corporate powers or some of them which might have been rightfully used by such an organization. Such being the proper conception of a corporation *de facto*, it follows that a substantial compliance with the law in effecting a corporate organiza-

tion is not necessary to constitute the body and corporation *de facto*, because that makes it a corporation *de jure*."

It will be noted that there is no claim in this case that the plaintiff extended credit to the defendants as copartners, because the witness Anderson distinctly testified that he was not familiar with the form of the organization or company, and that he did not know whether it was a corporation or a partnership. There is no evidence that prior to the attempted incorporation the defendants ever did business as copartners, or jointly in any manner. In the case of *Whitney* v. *Wyman*, 101 U. S. 392, a Michigan statute similar to the one in question was before that court. In that case the corporation was organized under the statute of this State, which authorized mining and manufacturing companies to be created pursuant to its provisions. There the articles had not been filed with the secretary of State, or the county clerk at the time of giving the order. They were afterwards filed in both offices. The statute declared that they should be so filed before the corporation could commence business. The court, speaking through Mr. Justice Swayne, after referring to the point made by counsel that the corporation at the date of the order was forbidden to do any business, not having then filed its articles of association as required by the statute, said:

"The restriction imposed by the statute is a simple inhibition. It did not declare that what was done should be void, nor was any penalty prescribed. No one but the State could object. The contract is valid as to the plaintiff, and he had no right to raise the question of its invalidity."

It seems to us that the trial judge was correct in holding that the plaintiff was dealing with a corporation *de facto*, and it cannot be said that the plaintiff supposed that it was dealing with copartners, for it clearly appears that it did not know whether it was dealing with copartners or with a corporation. In *Swartwout* v. *Railroad*

*Co.*, *supra*, this court held that, in the case of the associates in the corporation *de facto* and those who have had dealings with it, there is a mutual estoppel resting upon broad grounds of right, justice, and equity, which prevents the former from denying, and the latter from disputing, the incorporation. *Jhons* v. *People*, 25 Mich. 502.

Although the proposition finds some support in the authorities cited by counsel from other States, we cannot agree with counsel for appellant when he states that, until the recording of the articles of association with the county clerk, the Fred J. Pound Company could have no corporate existence. By the act itself it is provided that the president shall cause the articles of association to be recorded. The statute therefore contemplates the complete organization of the association and the election of officers before the recording of the articles, and we think that the better doctrine is that the State only can interfere. in a case such as the one with which we are dealing.

There is no claim of fraud or false representation here. And it seems to us that it is undisputed that there was a bona fide attempt to organize a corporation under the statute. Where an attempt has been made to organize a corporation under a valid act, and the question is one of regularity merely, parties recognizing its legal corporate existence by dealing with it have no right to object to any irregularity in such organization.

As this court said in *Eaton* v. *Walker*, 76 Mich. 585 (43 N. W. 640 [6 L. R. A. 102]):

"Two things are necessary to be shown in order to establish a corporation *de facto*, viz.: (1) The existence of a charter, or some law under which a corporation, with the powers assumed, might lawfully be created. (2) A user by the party to the suit of the rights claimed to be conferred by such a charter or law. *U. S. Bank* v. *Stearns*, 15 Wend. [N. Y.] 314. If the law exists, and the record exhibits a bona fide attempt to organize under it, very slight evidence of user beyond this is all that can be required. *M. E. Church* v. *Pickett*, 19 N. Y. 487."

Both of these requisites appear in the instant case.

We think the trial judge was justified in directing a verdict for the defendants, and the judgment of the circuit court is affirmed.

OSTRANDER, C. J., and STEERE, MOORE, and BROOKE, JJ., concurred.